497 A.2d 152

**STATE of Maryland**

v.

**Richard Miles CHANEY.**

**No. 131, Sept. Term, 1984.**

Court of Appeals of Maryland.

Sept. 11, 1985.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellant.

Melissa M. Moore, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender and George E. Burns, Jr., Asst. Public Defender, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

MURPHY, Chief Judge.

By indictment filed on August 1, 1977, the Grand Jury for Anne Arundel County charged that Richard Miles Chaney, on December 6, 1971, in said county

"did wilfully and deliberately, with premeditation kill and slay Elizabeth Ann Metzler, contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State (Common Law and Art. 27, Sec. 407–410)."

The statutes referred to in the indictment classify various kinds of common law murder as murder in the first degree.

Chaney made no objection before or during his trial to the legal sufficiency or form of the indictment. He was convicted by a jury of first degree murder and sentenced to life imprisonment. The Court of Special Appeals affirmed the conviction in *Chaney v. State,* 42 Md.App. 563, 402 A.2d 86 (1979), *cert. denied,* 286 Md. 745 (1979).

In a second post conviction petition, Chaney claimed that his conviction should be vacated because the indictment failed to charge a crime. The petition was denied, but on application for leave to appeal, the Court of Special Appeals, in an unreported opinion, agreed with Chaney and vacated the conviction. Relying upon *Brown v. State,* 44 Md.App. 71, 410 A.2d 17 (1979), the intermediate appellate court concluded that because the indictment did not aver that the offense was "murder," and that it was committed with "malice aforethought," it failed to charge a cognizable crime. It held that the trial court did not possess jurisdiction to try the offense and because the defect in the indictment was jurisdictional, the issue could be raised at any time. We granted certiorari to consider the important issue presented in the case.

*Brown* involved a charging document containing language which, as here, asserted that the accused willfully, deliberately and with premeditation did "kill and slay" the named victim on a specified date in Anne Arundel County. In that case, the Court of Special Appeals said that an indictment for murder, to be legally sufficient to charge that offense, must comply with recognized common law standards or be in conformity with the statutory formula approved by the legislature.[1] As to the former, the court

---

1. The statute, now codified as Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 616, provides:

"In any indictment for murder or manslaughter, or for being an accessory thereto, it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to

concluded that the indictment did not comply with common law standards because it omitted the specific terms "murder" and "malice aforethought." 44 Md.App. at 76, 410 A.2d 17. As to the latter, the court noted that substantial compliance with the statutory short form indictment was sufficient; it held, however, that there was no such compliance because missing from the indictment was an essential element of the offense, *i.e.*, malice—the intentional doing of a wrongful act to another without legal excuse or justification. *Id.* at 78, 410 A.2d 17. The court rejected the argument that the averments in the indictment that the killing was willful, deliberate and premeditated constituted the equivalent of "malice." Such words, the court said, connote only the same general idea of an intention to kill and, as the indictment did not allege malice, it did not negate a legal excuse for the slaying. The court described this shortcoming as being "mortal," with the result that the indictment did not charge murder but only an act of homicide which, of itself, was not punishable as a crime. *Id.* at 78–79, 410 A.2d 17.

Subsequent to *Brown*, we decided *Williams v. State*, 302 Md. 787, 490 A.2d 1277 (1985). There, we recognized that a court is without power to render a verdict or impose a sentence under an indictment which does not charge a cognizable offense within its jurisdiction proscribed by common law or by statute. We said that a claim that an indictment fails to charge or characterize a crime is jurisdictional and may be raised at any time. But in determining, for jurisdictional purposes, whether an indictment sufficiently charges and characterizes a crime, we made clear in *Williams* that merely because the charging document does not allege, expressly or by implication, every essential element of an offense does not necessarily mean that no

the following effect: 'That A.B., on the ..... day of ..... nineteen hundred and ....., at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and murder) C.D. against the peace, government and dignity of the State.'"

cognizable crime within the court's subject-matter jurisdiction has been charged. We said that while the customary method of identifying a particular crime charged in an indictment has been to aver its essential elements, that method is not exclusive "and the use of other words that sufficiently characterize the crime will satisfy the jurisdictional requirement." 302 Md. at 793, 490 A.2d 1277.

■■■ Murder is a common law offense in Maryland and is within the jurisdiction of the circuit courts of the State. *Campbell v. State,* 293 Md. 438, 444 A.2d 1034 (1982); *Gladden v. State,* 273 Md. 383, 330 A.2d 176 (1974). Malice is, of course, an essential ingredient of murder; its presence, either directly or inferentially, must be established to sustain a conviction for the offense. *Stansbury v. State,* 218 Md. 255, 146 A.2d 17 (1958); *Chisley v. State,* 202 Md. 87, 95 A.2d 577 (1953).

■■ The indictment in this case does not contain all the language set forth in § 616 of Art. 27 for charging murder; the words "felonious," "malice aforethought," and "murder" are missing. The indictment charged only that Chaney "did wilfully and deliberately, with premeditation kill and slay" the named victim in violation of the common law and contrary to specified statutes punishing various forms of first degree murder. Implicit in this language is that the killing was unlawful. Although defective under § 616, we think these averments were sufficient, for jurisdictional purposes, to invest the circuit court with power to proceed to trial on the then unchallenged indictment—as it reasonably apprised Chaney, consistent with the notice requirements of Article 21 of the Maryland Declaration of Rights, that he was charged with unlawful homicide and specifically, by its reference to §§ 407–410 of Art. 27, with first degree murder.

■■■ The test for determining whether the circuit court possessed jurisdiction over the offense charged in this case is not, therefore, whether the recital in the indictment that the killing was willful, deliberate and premeditated consti-

tuted the substantial equivalence of an allegation of malice and murder. Rather, in ascertaining the existence of jurisdiction in the circuit court, we consider the indictment in its entirety. That there may have been defects in the indictment which might have subjected it to dismissal upon timely pretrial motion does not affect the court's jurisdiction over the offense charged. Under Maryland Rule 4–252(a), formerly Rule 736a, a claimed defect in an indictment, if not jurisdictional must be seasonably raised before the trial court or it is waived.[2] *Williams, supra,* 302 Md. at 792, 490 A.2d 1277; *Hall v. State,* 302 Md. 806, 809, 490 A.2d 1287 (1985). As the indictment in this case was not jurisdictionally defective, and as it was not timely challenged by motion prior to trial as required by our rules, we think the Court of Special Appeals erred in vacating the conviction.

JUDGMENT REVERSED, WITH COSTS.

COLE, Judge, dissenting.

I cannot reconcile the Court's decision with the constitutional right of an accused under Article 21 of the Maryland Declaration of Rights[1] to be informed of the accusation against him. Accordingly, I respectfully dissent.

## I

The indictment here states that the accused "did wilfully and deliberately, with premeditation kill and slay" a named individual on a specified date in Anne Arundel County. The majority forthrightly acknowledges that this indictment omits the words "felonious," "malice aforethought," and "murder." The Court further acknowledges, as it must,

---

**2.** The rule requires that a motion alleging a "defect" in the charging document "other than its failure to show jurisdiction in the court or its failure to charge an offense" must be filed within a designated time period prior to trial or the defect is waived.

**1.** Article 21 of the Maryland Declaration of Rights provides "[t]hat in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence[.]"

that this indictment is defective under the statutory short form for murder set forth in Md.Code (1957, 1982 Repl. Vol.), Art. 27, § 616. Despite this defect, the Court nonetheless concludes that the remaining averments in the indictment "were sufficient, for jurisdictional purposes, to invest the circuit court with power to proceed to trial on the then unchallenged indictment[.]" The Court contends that the averments in the indictment reasonably apprised the appellant "that he was charged with unlawful homicide and specifically, by its reference to §§ 407–410 of Art. 27, with first degree murder." Several aspects of this reasoning provoke comment.

At bottom, the only conceivable reason appellant could have been informed that he was charged with first degree murder is the parenthetical reference in the indictment to §§ 407–410 of Art. 27.[2] One therefore gathers that this case stands for the rather remarkable proposition that citation to a criminal statute will reasonably apprise the defendant of the crime with which he is charged consistent with Article 21 of the Maryland Declaration of Rights. I must confess that I have never understood this to be the law in Maryland. Furthermore, for reasons it never cares to explain, the Court inexplicably ignores the cautionary words written by Judge Digges barely four years ago in a case involving the sufficiency of charging documents:

> Nor are the defects in these particular charging documents ameliorated by the citation of the statutory section, the violation of which the defendants were intended to be charged; reference to the criminal enactment does not supply the missing elements and satisfy the requirements of our constitution. It takes little imagination to foresee that the State's contention, if accepted, would obviate the necessity of alleging *any* material element of

---

2. The indictment filed in this case charged that appellant "did wilfully and deliberately, with premeditation kill and slay Elizabeth Ann Metzler, contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State (Common Law and Art. 27, Sec. 407–410)."

the offense, for any distinction which might be drawn between supplying a crucial element by citation of the statute and supplying all essential allegations in this manner is so fine as to be well-nigh invisible.

*Ayre v. State*, 291 Md. 155, 166–68, 433 A.2d 1150, 1158 (1981) (footnote omitted; emphasis in original). Judge Digges went on to explain that although authority for each count charged is required to be furnished by the Maryland Rules, "[t]his reference exists as a matter of convenience to the parties and the court, and thus possesses no substance of its own." *Id.* at 168 n. 9, 433 A.2d at 1158 n. 9. As applied to this case, *Ayre* therefore requires that we disregard the parenthetical citations to Maryland's murder statutes in determining whether the indictment has fulfilled its constitutionally mandated informative purposes. Consequently, I come to the Court's contention that the indictment reasonably apprised appellant that he was charged with "unlawful homicide."

Once the indictment is stripped of these citations, the Court does not—and cannot—state that the indictment specifically informs appellant that he has been charged with first degree murder. Neither does the indictment specifically inform appellant that he has been charged with second degree murder or, for that matter, manslaughter. Appellant is therefore at a loss to determine from the face of the indictment whether he has been charged with murder or manslaughter. The Court does not pause to consider that "unlawful homicide" includes a comparatively large array of offenses (first degree murder, second degree murder, manslaughter) that differ as to essential elements and defenses. The imprecise—and I dare say incorrect—characterization of the offense of first degree murder in this case in no way informed appellant of that crime.

What seems to be at work in this case is an elusive standard for determining the sufficiency of charging documents in the context of Article 21 of the Maryland Declaration of Rights. In *Williams v. State*, 302 Md. 787, 490 A.2d 1277 (1985), the lead case in this area for this Term,

the Court articulated its "common parlance" approach to the sufficiency of charging documents. *Williams* involved a charging document that purported to charge the common law offense of armed robbery by alleging that the defendant "did rob" the victim of certain personal property. Although the charging document omitted the essential mental element of that common law offense, and despite the State's failure to comply with the statutory short form for that offense, the *Williams* Court nonetheless determined that the charging document passed constitutional muster under Article 21. The majority in *Williams* based this conclusion on the theory that the "common parlance" of "did rob" inferentially supplied the omitted mental element for armed robbery.

Most recently, in *Jones v. State*, 303 Md. 323, 493 A.2d 1062 (1985), the Court once again employed its common parlance approach in a case involving a constitutional challenge to the legal sufficiency of the statutory form of charging document for the crime of theft. The *Jones* Court stated that "[i]n common parlance, to steal is to take something that does not belong to you." *Id.* at 340, 493 A.2d at 1070. The Court then concluded:

> To steal property is to take it with an intent to deprive the owner of the rights and benefits of ownership.... In the context of § 344(a), the word "steal" encompasses all categories of conduct by which theft can be committed under the five subsections of § 342. It plainly implies the element of scienter; it includes wilfullness and knowledge. To charge, as here, that the accused "did steal," on a designated date, described personal property of a named victim of a specified value is properly to characterize the crime of theft under § 342 and to sufficiently set forth those elements of the offense as fairly apprise the accused of the crime charged.

*Id.* at 340, 493 A.2d at 1070–71.

Against this backdrop of precedent, one searches today's opinion in vain to find reference to, let alone application of, the Court's newly minted common parlance approach. This

strange silence is largely understandable because it allows the Court to reach the result it so earnestly seeks. More to the point, application of the common parlance approach to the case *sub judice* would require the Court to vacate the appellant's conviction because the common parlance of the language used in the indictment does not remotely characterize the offense of first degree murder. The Court, however, tells us that "[t]he test for determining whether the circuit court possessed jurisdiction over the offense charged ... is not ... whether the recital in the indictment that the killing was willful, deliberate and premeditated constituted the substantial equivalence of an allegation of malice and murder." Instead, we learn that "in ascertaining the existence of jurisdiction in the circuit court, we consider the indictment in its entirety." This test is no test at all, but is instead a classic example of the Court's standardless and shifting approach to the sufficiency of charging documents.

## II

I have previously expressed my views concerning the sufficiency of charging documents at common law and under the statutory short forms, and I need not recount those views in detail today. *See Delclef v. State,* 303 Md. 344, 347, 493 A.2d 1073, 1074 (1985) (Cole, J., concurring); *Jones v. State, supra,* 303 Md. at 342, 493 A.2d at 1071 (Cole, J., concurring); *Hall v. State,* 302 Md. 806, 809, 490 A.2d 1287, 1288 (1985) (Cole, J., dissenting); *Williams v. State, supra,* 302 Md. at 794, 490 A.2d at 1280 (Cole, J., dissenting). Nevertheless, a few comments are in order.

As an initial matter, this case resembles *Williams* in several significant respects. First, the offenses purportedly charged in both cases are common law offenses. Second, in attempting to charge these offenses the State in both cases omitted an essential element and, in so doing, failed to charge the offenses at common law. Third, the State in both cases failed to comply substantially with the statutory short form for these common law offenses. A fuller expla-

nation of the last two observations makes clear my disagreement with the majority.

For over a century this Court has required the State to include all the "essential" or "material" elements of the crime in the charging document so as to guard against a wrongful prosecution and to put the defendant on notice of what he is called upon to defend. *See, e.g., Robinson v. State,* 298 Md. 193, 202, 468 A.2d 328, 333 (1983); *Deckard v. State,* 38 Md. 186, 201 (1873); *see also Williams v. State, supra,* 302 Md. at 795–96, 490 A.2d at 1281–82 (listing cases). This Court has also stated in an unbroken line of cases that "malice aforethought" is an essential or material element of the common law offense of murder. *See, e.g., Gladden v. State,* 273 Md. 383, 388, 330 A.2d 176, 179 (1974); *Faulcon v. State,* 211 Md. 249, 257, 126 A.2d 858, 862 (1956); *Chisley v. State,* 202 Md. 87, 104–05, 95 A.2d 577, 585 (1953). Here, without as much as a backward look, the Court ignores this precedent and concludes that an indictment omitting the essential element of "malice aforethought" validly charges first degree murder.

The Court compounds its error by not recognizing the common law requirement that an indictment for murder must contain the averment that the accused "murdered" the victim. *See, e.g.,* 4 W. Blackstone, *Commentaries on the Law of England* \*307 (W. Lewis ed. 1922) (in an indictment for murder at common law "it is necessary to say that the party indicted 'murdered,' not 'killed,' or 'slew,' the other[.]"). Although I concede that the policy of modern courts has been to dispense with extremely technical early common law pleading rules, it nonetheless remains that a charging document must allege fully the essential elements of the offense charged. *See State v. Wheatley,* 192 Md. 44, 50, 63 A.2d 644, 647 (1949). In concert with this policy, it is plain to me that the indictment here is jurisdictionally defective because it omits the essential element of malice aforethought. In light of the indictment's failure to satisfy the common law requirements for alleging murder, the State must necessarily place exclusive reliance upon the

statutory short form for murder contained in § 616 of Art. 27. It is to this statute that I now turn.

Nearly eighty years ago the General Assembly first enacted a statutory short form for murder. 1906 Md.Laws 248. This short form, now codified at § 616 of Art. 27, provides in its entirety:

> In any indictment for murder or manslaughter, or for being an accessory thereto, it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to the following effect: "That A.B., on . . . . . day of . . . . . nineteen hundred and . . . . . , at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and murder) C.D. against the peace, government and dignity of the State."

The indictment in the case *sub judice* does not track the statutory short form. Specifically, the indictment omits the words "malice aforethought," "murder," and "feloniously." Because it is not necessary to use the word "feloniously" to charge a felony in a charging document,[3] the issue narrows to whether the omission of "malice aforethought" and "murder" is fatal to the indictment. In my view, these omissions are fatal for the simple reason that no other language in the indictment conveys the meaning of those essential elements. As Chief Judge Gilbert wrote for the Court of Special Appeals in a case strikingly similar to the one here, "[m]issing from the indictment is that indispensable ingredient of murder—malice. . . . Malice, which may be express or implied, has been defined as meaning 'the *intentional* doing of a *wrongful* act to another without legal excuse or justification.'" *Brown v. State,* 44 Md.App. 71, 78, 410 A.2d 17, 22 (1979) (citation omitted; emphasis in original) (quoting *Gladden v. State, supra,* 273 Md. at 388, 330 A.2d at 179). Furthermore, "murder" is a term of art

---

**3.** Maryland Rule 4–202(d) provides that "[i]t is not necessary to use the word 'feloniously' or 'unlawfully' to charge a felony or misdemeanor in a charging document."

that has a distinct meaning. The phrase "kill and slay" is not substantially equivalent to "murder," as the General Assembly made indelibly clear by directing that the word "murder" be used in an indictment for murder under § 616.

This conclusion is fortified when one considers that § 616 encompasses both murder and manslaughter. To charge murder under that section, the prosecutor must resort to the parenthetical language. By contrast, a manslaughter indictment under § 616 does not include the parenthetical language. Here, the State fashioned an amalgam under § 616 that smacks of a hit and miss approach, with the result that it failed to charge a cognizable offense under Maryland law. As the *Brown* Court correctly observed, "[t]here are no degrees of 'kill and slay.' Homicide, *per se*, is not punishable at law as a crime. *Ergo*, the indictment did not charge a crime." *Brown v. State, supra*, 44 Md. App. at 79, 410 A.2d at 22; *see also Pfeiffer v. State*, 44 Md.App. 49, 58–59, 407 A.2d 354, 359 (1979) (on motion for reconsideration) (failure to allege malice in murder indictment constitutes reversible error because malice is an essential element of that crime). By upholding this indictment, the Court once again encourages prosecutors to engage in slipshod charging practices with impunity at the expense of one of the most basic constitutional rights afforded an accused.

### III

Upon the Court's adoption of its newly found common parlance approach in *Williams*, I forecast that the Court would eventually "sanction a murder conviction based upon an indictment omitting the essential element of 'malice.' " *Williams v. State, supra*, 302 Md. at 802, 490 A.2d at 1285 (Cole, J., dissenting). Today the Court in fact sanctions such a conviction, but does so under an approach that seemingly departs from that adopted in *Williams*. In so doing, the Court mocks its unwillingness in *Ayre* "to wash Article 21 of its informative substance," *Ayre v. State, supra*, 291 Md. at 169, 433 A.2d at 1158, and sets us upon a

standardless course in determining whether a charging document comports with the dictates of Article 21.

Because the indictment in the instant case fails to characterize the offense of first degree murder, it is fatally defective and can thus be challenged by the appellant at any time. Accordingly, I would affirm the decision of the Court of Special Appeals.